UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                                  :
WANDA E. CABAN,                                   :
                                                  :
                    Plaintiff,                    :
                                                  :        **OPINION AND ORDER**
         - against -                              :
                                                  :        **11 Civ. 3417 (SAS)**
THE CITY OF NEW YORK; CITY                        :
UNIVERSITY OF NEW YORK                            :
BOROUGH OF MANHATTAN                              :
COMMUNITY COLLEGE; ROBERT                         :
RAFFERTY,                                         :
                    Defendants.                   :
-------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

Wanda Caban has sued the City of New York (the "City"), the City
University of New York ("CUNY") Borough of Manhattan Community College
("BMCC"), and Robert Rafferty, alleging violations of Title VII of the Civil Rights
Act of 1964, as amended ("Title VII"),[1] state and city human rights laws, 42 U.S.C.
§ 1983, and breach of her union contract.  Caban alleges that Rafferty, her former
supervisor at BMCC, discriminated against her based on her race and national
origin and unlawfully retaliated against her.  All defendants now move for

---

[1]      42 U.S.C. § 2000e, et seq.

1

summary judgment.  The motion is denied in part and granted in part.

## II.   BACKGROUND

From 2004 to 2010, Caban was an employee at the BMCC.[2]  In 2010,

she began working as an assistant purchasing agent,[3] and in June of that year

Rafferty was hired as her immediate supervisor.[4]  Caban testified at deposition that

Rafferty initially treated her kindly and was attentive to her needs.[5]  However,

Caban described a brief, race-related conversation she had with Rafferty shortly

after he arrived.  When Rafferty heard Caban speaking Spanish, he asked her race

and if she was related to a Portugese colleague.[6]  She responded that she was

Puerto Rican and not related to the Portugese colleague.[7]

Caban testified that after that conversation, Rafferty's behavior toward

her changed markedly.  Caban and others testified that Rafferty spoke to Caban in

---

[2]      *See* Deposition of Wanda Caban ("Caban Dep.") at 82:2-25, Ex. 11 to
Declaration of Robert Dembia in Opposition to Motion for Summary Judgment
("Dembia Dec.").

[3]      *See* BMCC Building and Grounds Organizational Chart ("Org.
Chart"), Ex. 18 to Dembia Dec.

[4]      *See* Defendants' Rule 56.1 Statement ("Def. 56.1") ¶¶ 3-4.

[5]      *See* Caban Dep. at 23:12-25.

[6]      *See id.* at 48:18-50:6; Deposition of Robert Rafferty ("Rafferty Dep.")
at 91:13 (discussing Portugese colleague), Ex. 14 to Dembia Dec.

[7]      *See* Caban Dep. at 50:2.

an accusatory and agitated manner,[8] changed her job description several times,[9] deprecated her work quality to supervisors,[10] and told other employees not to speak with her.[11]   Rafferty, however, testified that his conduct was warranted based on Caban's work performance.[12]   But a co-worker, Raisse Lopez, testified to the timing of Rafferty's more aggressive demeanor:  "I guess after he found out she was Puerto Rican, he really didn't care for her too much."[13]

Caban also described a tense encounter with Rafferty directly after she filed an internal discrimination claim.  Rafferty allegedly told her to drop her complaint, called her incompetent "several times," and told her to drop the charges because "[she didn't] want to be involved in 'litigation' with him."[14]   Rafferty's

---

[8]     See id. at 26, 80.

[9]     See Deposition of Elena Samuels (Assistant to the Vice President of Finance) ("Samuels Dep.") at 93-94, 96, Ex. 19 to Dembia Dec.

[10]     See Rafferty Dep. at 194:12-15.

[11]     See Samuels Dep. at 94 (describing Rafferty's request that certain employees not speak with Caban and that Caban not speak with these employees).

[12]     See Rafferty Dep. at 147.

[13]     Deposition of Raissa Lopez (a co-worker) ("Lopez Dep.") at 28 ("I could see how indifferent he was with her . . . . He would sort of like try to make her feel . . . like nothing, she's stupid."), Ex. 10 to Dembia Dec.

[14]     Affidavit of Wanda Caban ("Caban Aff.") ¶ 4; Caban Dep. at 52:15.

overall conduct produced an effect upon Caban.[15]  She described panic attacks, anxiety, and stress.[16]  Caban eventually applied for, and was transferred to, a similar job at the College of Staten Island, which pays seven thousand dollars less annually.[17]  After Caban's departure, in November of 2011, Rafferty was terminated because of "[c]oncerns with how [he] relate[d] to [his] subordinates and co-workers" and his behavior during a November 2011 staff meeting.[18]  On May 19, 2011, Caban filed the instant case.

The Comptroller of the City of New York sent a notice to Caban requesting her appearance for a General Municipal Law 50-h hearing ("50-h Hearing") on June 23, 2011.[19]  The hearing was subsequently postponed to November 29, 2011.[20]  Caban did not appear at this hearing.  She did, however, comply with the Equal Employment Opportunity Commission ("EEOC")

---

[15]     See Caban Dep. at 46.

[16]     See id.

[17]     See id. at 27-29.

[18]     See 11/16/11 Letter from Antonio Perez (President of BMCC) to Rafferty, Ex. 5 to Dembia Dec.

[19]     See 6/6/11 Adjourned 50-h Hearing Notice ("6/6/11 50-h Notice"), Ex. J to Declaration of Daniel Chiu in Support of Motion for Summary Judgment ("Chiu Dec.").

[20]     See 10/26/11 Adjourned 50-h Hearing Notice ("10/26/11 50-h Notice"), Ex. J to Chiu Dec.

requirements and received a right-to-sue letter on March 31, 2011.[21]

## III.   LEGAL STANDARD

Summary judgment in defendants' favor is appropriate only if they show "that there is no genuine dispute as to any material fact and [that they are] entitled to judgment as a matter of law."[22]  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit."[23]

Because they are moving for summary judgment, defendants "bear[] the burden of establishing the absence of any genuine issue of material fact."[24]  To defeat defendants' motions, plaintiffs "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[25] and "may not rely on conclusory allegations or unsubstantiated speculation."[26]

---

[21]     *See* 3/31/11 EEOC Notice of Right to Sue, Ex. 1 to Complaint.

[22]     Fed. R. Civ. P. 56(a).

[23]     *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).

[24]     *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

[25]     *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[26]     *Id.*

5

In deciding summary judgment motions, courts must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant[s]."[27]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[28] "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[29]

Summary judgment may be proper even in workplace discrimination cases, which tend to be very fact-intensive, because "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation."[30]  However, greater caution must be exercised in granting summary judgment in employment discrimination cases where the employer's intent is genuinely at issue and circumstantial evidence may reveal an inference of discrimination.[31]  This is so

---

[27]     *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

[28]     *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[29]     *Brod*, 653 F.3d at 164.

[30]     *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

[31]     *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

6

because "[e]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law."[32]  Nonetheless, "[c]ourts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little or no evidence of discrimination."[33]

It is incumbent upon courts to "distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."[34]  "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."[35]  Thus, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."[36]

## IV.   APPLICABLE LAW

---

[32]     *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) (quotation marks and citation omitted, brackets in original).

[33]     *Alphonse v. State of Connecticut Dep't of Admin. Servs.*, No. 3:02 CV 1195, 2004 WL 904076, at *7 (D. Conn. Apr. 21, 2004) (quotation marks and citation omitted).  *Accord Meiri*, 759 F.2d at 997-98; *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994).

[34]     *Bickerstaff*, 196 F.3d at 448.  *Accord Cameron v. Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003).

[35]     *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (alteration in original).

[36]     *Schwapp*, 118 F.3d at 110.

A.    **TITLE VII**

1.    **Disparate Treatment Discrimination**

Title VII proscribes discrimination against or termination of an individual on the basis of "race, color, religion, sex, or national origin."[37]  "To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting [analysis] laid out by *McDonnell Douglas Corp. v. Green*."[38]  "Under this framework a plaintiff must first establish a prima facie case of discrimination."[39]  To do so, a plaintiff must show:  "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination" based on her membership in the protected class.[40]

An adverse employment action is an action by which a plaintiff "has suffered 'a materially adverse change in h[er] employment status' or in the terms

---

[37]    42 U.S.C. § 2000e-2.

[38]    *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[39]    *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

[40]    *Id.* at 492.

and conditions of h[er] employment."[41]  Examples of adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities."[42]  "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"[43]  "[A]lthough reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions."[44] "Courts have held that negative evaluations . . . without any accompanying adverse results, are not cognizable."[45]  "[B]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on

---

[41]     *Kessler*, 461 F.3d at 207 (quoting *Williams v. R.H. Donnelley*, *Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)).

[42]     *Id.* (quotation marks and citation omitted).

[43]     *Kassner v. Second Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2001)).

[44]     *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005) (quotation marks and citations omitted).

[45]     *Bennett v. Watson Wyatt & Co.,* 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001).  *Accord White v. Fuji Photo Film USA, Inc.*, 434 F. Supp. 2d 144, 152 (S.D.N.Y. 2006).

9

the terms and conditions of . . . employment."[46]  Courts require actions that are

more significant and permanent.[47]  It is well-established that Title VII "'does not

set forth a general civility code for the American workplace.'"[48]

    If plaintiff succeeds in establishing a prima facie case, then the burden

shifts to the employer to articulate a legitimate, non-discriminatory reason for the

adverse employment action.[49]  Finally, if the employer articulates a non-

discriminatory reason for the challenged action, the burden shifts back to the

plaintiff to demonstrate that defendants' explanation was pretextual.[50]

## 2.    Hostile Work Environment

    An employee seeking to bring a hostile work environment claim must

demonstrate the following:  (1) she is a member of a protected class; (2) she

---

    [46]    *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005)
(quotation marks and citations omitted).

    [47]    *See Phillips v. Bowen*, 278 F.3d 103, 117 (2d Cir. 2002) (holding that
there is no cause of action to "vindicate an employee's trivial complaints about an
unpleasant working environment"); *Bennett*, 136 F. Supp. 2d at 245 (holding that
plaintiff's alleged underutilization did not rise to the level of an actionable adverse
employment action).

    [48]    *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010)
(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).
*Accord Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010).

    [49]    *See Ruiz*, 609 F.3d at 492.

    [50]    *See id.*

suffered unwelcome harassment; (3) she was harassed *because of her membership in a protected class*; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.[51]

> In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) that there is a "specific basis for imputing the conduct creating the hostile work environment to the employer."[52]

Evaluating a hostile environment involves reviewing the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[53] The question is whether a reasonable person would have found the environment to be hostile (objective prong) and if the plaintiff perceived it as such (subjective prong).[54]  "[A] plaintiff need not show that her hostile working environment was

---

[51]  *See Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).

[52]  *Duch v. Jakubek,* 588 F.3d 757, 762 (2d Cir. 2009) (quoting *Feingold v. New York*, 366 F.3d 138, 149-50 (2d Cir. 2004)).

[53]  *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).

[54]  *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58 (2d Cir. 2004).

both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions."[55]

### 3.   Retaliation

"Title VII also makes it unlawful for an employer to discriminate against an employee 'because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge . . . in an investigation, proceeding, or hearing under this subchapter.'"[56]  To establish a prima facie case of retaliation, plaintiff must show:  "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action."[57]  An adverse employment action in the context of a Title VII retaliation claim is an action sufficiently severe to dissuade a reasonable worker from making or supporting a claim of

---

[55]     *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 119 (2d Cir. 2010) (emphasis in original).

[56]     *Kaytor*, 609 F.3d at 552 (quoting 42 U.S.C. § 2000e-3(a)).

[57]     *Id.*

discrimination.[58] "Title VII's anti-discrimination and anti-retaliation provisions 'are not coterminous;' anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'"[59]

> "Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."[60]

The three-step *McDonnell Douglas* burden-shifting analysis also applies to retaliation claims.[61] "At the summary judgment stage, if the plaintiff presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate non-retaliatory reason for the adverse employment action."[62] "If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-

---

[58]   *See Burlington N.*, 548 U.S. at 68.

[59]   *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N.*, 548 U.S. at 67).

[60]   *Id.* at 170 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

[61]   *See Kaytor*, 609 F.3d at 552.

[62]   *Id.* at 552-53.

retaliatory reason is pretextual and that retaliation was a 'substantial reason for the adverse employment action.'"[63]

## B.    Section 1983

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[64] "The purpose of [section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[65]  In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[66]

For a person deprived of a constitutional right to have recourse against

---

[63]     *Id.* at 553 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

[64]     *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  *Accord  Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.'") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

[65]     *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[66]     *See Palmieri v. Lynch,* 932 F.3d 73, 78 (2d Cir. 2004).

a municipality under section 1983, he or she must show harm that results from an identified municipal "policy," "custom," or "practice."[67]   In other words, a municipality may not be found liable simply because one of its employees or agents is guilty of some wrongdoing.[68]  Moreover, a policy, custom, or practice generally cannot arise from a single instance of unconstitutional conduct by an employee of the municipality.[69]

In the absence of an established written municipal policy, plaintiff must prove that a municipal practice was "so persistent and widespread as to practically have the force of law"[70] or that a practice or custom of subordinate employees was "so manifest as to imply the constructive acquiescence of senior

---

[67]     *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[68]     *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 402 (1997).

[69]     *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury.") (citation omitted); *Tuttle*, 471 U.S. at 831 (Brennan, J., concurring in part and concurring in the judgment) ("[T]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.").

[70]     *Connick*, 131 S. Ct. at 1354.

policy-making officials."[71]

### C.    New York State Human Rights Law

The New York State Human Rights Law ("NYSHRL") provides, in relevant part:  "It shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's age, race . . . national origin . . . [or] sex . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."[72] "The standards for recovery under New York State's Human Rights Law . . . are in accord with Federal standards under [T]itle VII of the Civil Rights Act of 1964."[73] In addition, discrimination claims under the NYSHRL and the New York City Human Rights Law (NYCHRL") are subject to the same "burden-shifting framework that the Supreme Court articulated in *McDonnell Douglas*" for Title VII claims.[74]  Yet unlike Title VII, liability under the NYSHRL "may be imposed

---

[71]     *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992).

[72]     N.Y. Exec. Law § 296(1)(a).

[73]     *McQueen-Starling v. UnitedHealth Group, Inc.*, No. 08 Civ. 4885, 2010 WL 768941, at *5 (S.D.N.Y. Mar. 8, 2010) (quoting *Ferrante v. American Lung Ass'n*, 90 N.Y.2d 623, 629 (1997)).

[74]     *Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 294-96 (S.D.N.Y. 2012) (citations omitted).  *Accord Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).

on individuals."[75]

### D.    New York City Human Rights Law

The NYCHRL provides, in relevant part, as follows:

> It shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived age, race . . . national origin, [or] gender [ . . . ] of any person, to [ . . . ] discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.[76]

"City HRL claims have typically been treated as coextensive with state and federal counterparts.  However, the New York City Council has rejected such equivalence."[77]  By means of the Local Civil Rights Restoration Act of 2005 ("Restoration Act"),[78] the City Council "confirm[ed] the legislative intent to abolish 'parallelism' between the City HRL and federal and state anti-discrimination law."[79]  The NYCHRL must be construed "independently from

---

[75]    *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012).

[76]    N.Y.C. Admin. Code § 8-107(1)(a).

[77]    *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

[78]    N.Y.C. Local Law No. 85 (2005).

[79]    *Loeffler*, 582 F.3d at 278.

17

similar or identical provisions of New York state or federal statutes."[80]

"Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a floor below which the City's Human Rights law cannot fall."[81]  "'As a result of [the Restoration Act], the City HRL now explicitly requires an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language.'"[82]  In stating a retaliation claim under NYCHRL, plaintiff need not establish that an adverse employment action was materially adverse.  She need only establish that the action was "reasonably likely to deter a person from engaging in a protected activity."[83]

### E.  Qualified Immunity

The doctrine of qualified immunity "shields federal and state officials from money damages unless a plaintiff [can show] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at

---

[80]     Local Law 85, § 1.

[81]     *Id.*

[82]     *Loeffler*, 582 F.3d at 278 (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)).

[83]     *Williams*, 872 N.Y.S.2d at 34.

the time of the challenged conduct."[84]  It is "a defense afforded only to individuals

– not municipalities or municipal agencies."[85]  "[A]n official sued in his official

capacity may not take advantage of a qualified immunity defense."[86]

There are three steps in a qualified immunity analysis.  The court first

must determine whether, "taken in the light most favorable to the party asserting

the injury . . . the officer's conduct violated a constitutional right . . . ."[87]  Next, the

court asks whether or not, at the time of the violation, the law prohibiting the

conduct in question was clearly established.[88]  "Clearly established" means:  "(1)

the law is defined with reasonable clarity, (2) the Supreme Court or Second Circuit

has recognized the right, and (3) 'a reasonable defendant [would] have understood

from the existing law that [his] conduct was unlawful.'"[89]  If the law prohibiting

---

[84]     *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  *Accord Velez v. Levy*, 401 F.3d 75, 100 (2d Cir. 2005).

[85]     *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 153 n.2 (S.D.N.Y. 2006).

[86]     *Mitchell v. Forsyth*, 472 U.S. 511, 556 n.10 (1985) (Brennan, J., concurring in part and dissenting in part) (citing *Brandon v. Holt*, 469 U.S. 464, 472-73 (1985)).

[87]     *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[88]     *See id.*

[89]     *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003) (quoting *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)) (alterations in original).

defendant's conduct was clearly established, the court moves to the final step in the analysis, which asks whether or not "'it was objectively reasonable for [the defendant] to believe that his actions were lawful at the time of the challenged act.'"[90]  An official's conduct is objectively unreasonable, and not eligible for qualified immunity, "when no officer of reasonable competence could have made the same choice in similar circumstances."[91]

Qualified immunity under New York common law is similar, "grant[ing] government officials qualified immunity in state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis."[92]  To be entitled to qualified immunity under state law, it must be "objectively reasonable for the [government officers] involved to believe that their conduct was appropriate under the circumstances, or that officers of reasonable competence would disagree as to whether their conduct was proper."[93]

---

*Accord Ashcroft*, 131 S. Ct. at 2083.

[90]       *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995)).

[91]       *Id.* at 138 (quotation marks omitted).

[92]       *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 580 (S.D.N.Y. 2011) (citing *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 364 (2d Cir. 2004)).

[93]       *Id.* (citing *Allen v. City of New York*, No. 03 Civ. 2829, 2007 WL 24796, at *24 (S.D.N.Y. Jan. 3, 2007)).

## V.   DISCUSSION

### A.  Claims Against the City of New York Are Dismissed

Plaintiff concedes that her claims against the City of New York are "not supportable."[94]  All claims against the City of New York are dismissed with prejudice.

### B.  Federal Law Claims

#### 1. Title VII Claim Against Rafferty

Plaintiff concedes that the Title VII claim against Rafferty is "not supportable."[95]  This claim is dismissed with prejudice.

#### 2. Title VII Claims Against CUNY

##### a.  Disparate Treatment

Caban has proffered sufficient evidence to create a material issue of fact on all four of the *McDonnell-Douglas* unlawful discrimination prongs.[96]  *First,* defendants do not contest Caban's assertion that she is Puerto Rican and that

---

[94]   Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment ("Pl. Mem.") at 3.

[95]   *Id.* at 3.  *See also Lore*, 670 F.3d at 169 ("Title VII does not impose liability on individuals.").

[96]   *See Stratton v. Department for the Aging for City of New York*, 132 F.3d 869, 879 (2d Cir. 1997) (discussing how to present a prima facie case for unlawful discrimination under *McDonnell*).

Hispanics are a protected class under Title VII.  *Second*, there is a genuine issue of material fact as to whether Caban was performing her job satisfactorily.  Facts tending to show satisfactory job performance include her prior upward career trajectory at CUNY,[97] her positive job evaluations,[98] and positive comments from her colleagues about her work.[99]  Testimony critical of Caban's work product comes almost exclusively from Rafferty.  The quality of Caban's job performance presents a material issue of fact to be determined by the finder of fact.

   *Third*, there is a genuine issue of material fact as to whether Caban suffered an adverse employment action.  Plaintiff and defendants cite conflicting deposition testimony describing the extent to which Caban's job duties changed and the extent of Rafferty's involvement.[100]  Elena Samuels, Assistant to the Vice President of Finance, testified that Rafferty was heavily involved in increasing Caban's job duties.[101]  Samuels stated that Rafferty

> asked us to change [the job description].  So we made the changes.
> And they were going back and forth several times. . . . But I

---

[97] *See* Caban Dep. 82:6-7.

[98] *See* BMCC Probationary and Service Report, Ex. 22 to Dembia Dec.

[99] *See* Deposition of Roy Montgomery at 117:5-8, Ex. 13 to Dembia Dec.; Lopez Dep. at 43:4-8.

[100] *Compare* Rafferty Dep. at 137:22-24, *with* Samuels Dep. at 96:4-14.

[101] *See* Samuels Dep. at 96:4-14.

remember he complained many times that he didn't like it, and it should be different, so we reworked it several times.[102]

Samuels then described how Rafferty "asked us to make it more gentle on [Caban's successor Patricia Ashford]."[103]  Examined in light of Rafferty's other conduct toward Caban, a reasonable jury could conclude that the change in job description was intended to make Caban's job more difficult and encourage her to seek other employment.  And based on Caban's departure, it appears that this tactic was successful.

*Fourth*, the circumstances surrounding Rafferty's behavior give rise to an inference of discrimination, and a reasonable juror could find that discriminatory intent underpinned Rafferty's behavior.  Caban describes how Rafferty stopped in his tracks when he heard her speaking Spanish,[104] immediately thereafter emailed Caban asking whether she was related to Wally Caban (who Rafferty believed was Portugese),[105] and then asked Caban her race.[106]  It was at

---

[102]     *Id.*

[103]     *Id.* at 99:14-16.

[104]     *See* Caban Dep. at 49:4-5.

[105]     *See id.* at 49:12-15; Rafferty Dep. at 91:13 (mentioning Portugese colleague).

[106]     *See* Caban Dep. at 50:2-3.

that time that Caban noticed the change in Rafferty's behavior.[107]  And while a plaintiff's own testimony can be sufficient, at least one other employee also noticed that Rafferty's behavior toward Caban changed after this incident.[108]  Given these facts, there is a genuine issue as to whether Rafferty's behavior was motivated by discriminatory intent.[109]  Accordingly, Caban's Title VII claim against CUNY based on disparate treatment may proceed.

### b.  Hostile Work Environment

A Title VII claimant may prove an adverse employment action by either showing direct discrimination or by demonstrating a hostile work environment.[110]  I now briefly review the facts that allow Caban to proceed on a hostile work environment claim.

When examining whether a hostile workplace exists, courts must

---

[107]   *See id.* at 50:14.

[108]   *See* Lopez Dep. at 28.

[109]   A genuine issue of fact arises even without considering Rafferty's November 2008 *Long Island Advance* letter to the editor, in which he bemoans athletic facilities "overrun by immigrant adults," the loss of jobs to "immigrant[s] who will do the same job for much less," and how these immigrants "put[] the taxpaying worker at a disadvantage." Letter to the Editor at 2-3, Ex. 6 to Dembia Dec.

[110]   *See Robles v. Cox & Co., Inc.*, 154 F. Supp. 2d 795, 802 (S.D.N.Y. 2001).

24

consider the totality of the circumstances, including a reasonable person's view (the objective prong) as well as the victim's subjective perspective.[111]  If Caban's work performance was satisfactory – which remains a disputed issue of fact – then Rafferty's work-related criticisms, job description modifications, negative comments to Caban's superiors, and aggressive demeanor were arguably unjustified.  They substantially changed Caban's work environment and certainly amounted to more than the mere "isolated remarks or occasional episodes" that courts have found to be insufficient.[112]  Lopez also noticed Rafferty's continued demeaning conduct toward Caban.[113]  As a result of this, Caban testified that she suffered from depression, panic attacks, and anxiety, with the last condition verified by her treating physician.[114]  The facts – from both an objective and subjective viewpoint – could support a finding that Rafferty's conduct was sufficiently pervasive and sustained as to create a hostile work environment.

### c.  Employer Liability

---

[111]    *See Harris*, 510 U.S. at 23; *Father Belle Cmty. Ctr. v. New York State Div. of Human Rights on Complaint of King*, 642 N.Y.S.2d 739, 744-45 (1996).

[112]    *Father Belle Cmty. Ctr.*, 642 N.Y.S.2d at 744-45 (citing *Harris*, 510 U.S. at 23).

[113]    *See* Lopez Dep. at 28.

[114]    *See* Caban Dep. at 44:11-45:25, 47:5-49:17.  *See also* 7/22/10 Note from Doctor Shaikh Hasan, Ex. 7 to Dembia Dec.

Conduct creating a hostile work environment must be imputed to the employer in order to find employer liability.[115]  "[A]n employer will be liable if the supervisor uses 'his actual or apparent authority to further the harassment, or if [the supervisor] was otherwise aided in accomplishing the harassment by the existence of the agency relationship.'"[116]  In addition to speaking loudly and aggressively, Rafferty's other actions toward Caban all involved the use of his authority as a supervisor:  including his modification of her job description, his order for her not to speak to any other supervisors or administrators, and his critical evaluation of her work to her superiors.  Because Rafferty was the "highest" supervisor on the building and grounds department hierarchy,[117] his actions toward Caban involved apparent or actual use of his position and authority.  Thus, Caban's Title VII claim against CUNY based on a hostile work environment may proceed.

### d.  Retaliation Claim

---

[115]    *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 70-71 (1986)), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998). Liability for disparate treatment by a supervisor is always imputed to the employer where there is an adverse employment action. *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992).

[116]    *Id.* (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994)).

[117]    *See* Org. Chart, Ex. 8 to Dembia Dec.

Caban has produced sufficient facts to make out a prima facie case for unlawful retaliation under Title VII.[118]  *First*, her complaint regarding Rafferty's behavior was a protected activity under Title VII.  *Second*, Rafferty's repeated demands that she withdraw her complaint demonstrate that he knew about it.[119] *Third*, testimony from Caban and Samuels creates a genuine issue of fact as to whether Caban suffered an adverse employment action.  Caban testified about changes in her job duties and workload following her complaint, in addition to Rafferty's multiple requests for her to withdraw the complaint.[120]  Samuels testified about Rafferty's role in changing Caban's job description, although she was not specific as to the nature of the changes or the timing.[121]  *Fourth*, Rafferty's behavior after learning of Caban's complaint gives rise to the inference that there is a causal connection between Caban's complaint and Rafferty's actions toward her. After learning of Caban's complaint, Rafferty called her into his office, told her to drop the complaint, and criticized her work.[122]  According to Caban, this

---

[118]     *See Burlington N.*, 548 U.S. at 68 (discussing four elements of prima facie case of retaliation).

[119]     *See* Caban Dep. at 52.

[120]     *See* Caban Aff. at 6; Caban Dep. at 52-55.

[121]     *See* Samuels Dep. at 94-101 (raising a genuine issue as to whether any changes in job description were retaliatory in nature).

[122]     *See* Caban Dep. at 52.

conversation occurred shortly before Columbus Day weekend of 2010.[123]  Rafferty also gave Caban an additional page of her new job description shortly before that weekend.[124]  Rafferty's repeated requests for Caban to withdraw her complaint, coupled with the timing of his job description modifications, create a genuine issue of fact as to the retaliation claim that cannot be resolved at the summary judgment stage.  Thus, Caban's Title VII claim against CUNY based on retaliation may proceed.

### 3.  Section 1983 Claim

Plaintiff neither alleges specific facts nor provides admissible evidence of a racially discriminatory policy or practice at CUNY.  Plaintiff also fails to allege an underlying constitutional violation.  Based on the absence of a constitutional violation by a state actor, no reasonable juror could find the existence of the type of widespread practice needed to impose liability under section 1983.[125]  Summary judgement therefore is granted on Caban's section 1983 claim.

### C.  City and State Law Claims

---

[123]     *See id.*

[124]     *See* Caban Aff. at 7.

[125]     *See Board of County Comm'rs*, 520 U.S. at 402.

28

**1. Caban's Failure to Appear at Her 50-h Hearing Requires Dismissal of City and State Discrimination Claims Against CUNY**

Caban failed to appear at her November 29, 2011 50-h hearing.[126] Absent good cause for her failure to attend, the city and state law claims against CUNY must be dismissed.[127]

Plaintiff argues that the New York *State* Comptroller must demand a 50-h examination for employees of community colleges and that the New York *City* Comptroller's letter was therefore insufficient.[128] However, section 6224(1) of the Education Law explicitly states that the section 6224 provisions requiring a state comptroller demand do *not* apply to community colleges of CUNY.[129]

---

[126]   *See* 10/26/11 50-h Notice, Ex. J to Chiu Dec.; Def. Mem. at 16. Caban does not contest (1) defendants' assertion that she failed to appear at her hearing or (2) the statement in the 10/26/11 50-h Notice that asserts that she failed to appear on her original hearing date. *See also* Transcript of 11/26/12 telephone conference at 9:19-21 (conceding that no good cause existed for plaintiff's absence at second 50-h hearing).

[127]   *See Kemp v. County of Suffolk*, 878 N.Y.S.2d 135, 136 (2009); *Perez v. City of New York*, 856 N.Y.S.2d 502 (Sup. Ct. N.Y. Co. 2008). Both the NYSHRL and the NYCHRL either mirror Title VII case law or provide a more liberal standard. *See Campbell*, 860 F. Supp. 2d at 294-96 (describing how NYCHRL employs a "liberal construction analysis"). Therefore, the city and state discrimination claims would survive if Caban had timely complied with the 50-h hearing requirements.

[128]   *See* Pl. Mem. at 7-8 (citing N.Y. Educ. Law § 6224(5)-(6)).

[129]   *See* N.Y. Educ. Law § 6224(1) ("The provisions of subdivisions four, five and six of this section shall not apply to such actions and proceedings" based

Moreover, "claims against the community colleges of CUNY are governed by §§ 50–e & 50–i of New York's General Municipal Law, suggesting that the municipality of the City of New York is responsible for paying any judgments rendered against CUNY's community colleges."[130]  This relationship between CUNY and the City makes the City Comptroller's 50-h hearing request a sufficient demand on behalf of CUNY and BMCC.  Furthermore, no section of the 50-h hearing demand letter indicated that it applied only to Caban's claims against the City of New York.[131]

       Caban has not asserted any good cause for missing her 50-h hearing.[132]  As a result, her NYCHRL and NYSHRL claims against CUNY – and

---

on a cause of action "involving a community college of the city university of New York or an officer, agent, servant or employee of such community college acting in the course of his employment.").

    [130]    *Hester-Bey v. New York City Technical Coll.*, No. CV-98-5129, 2000 WL 488484, at *3 (E.D.N.Y. Mar. 22, 2000).

    [131]    *See* 6/6/11 50-h Notice, Ex. J to Chiu Dec.

    [132]    *See Kemp*, 878 N.Y.S.2d at 136 (requiring "sufficient reason or . . . exceptional circumstances"); *De Gregorio v. Niagara Falls City Sch. Dist.*, 722 N.Y.S.2d 637 (2001) ("Where, as here, claimants fail to comply with a demand for examinations, a municipality may move to dismiss any subsequently commenced action based upon that failure [citation].  It is at that point that claimants' reasons for failing to comply with the demand should be asserted and the validity of the reason assessed by the court.").

against Rafferty in his official capacity – are dismissed.[133]

### 2. City and State Discrimination Claims May Proceed Against Rafferty in His Individual Capacity

The claim and examination rights in section 50-e and 50-h belong to

CUNY.[134]  Therefore, failure to comply with section 50-h does not preclude claims

against Rafferty in his individual capacity.

### 3. Rafferty Is Not Entitled to Qualified Immunity

Examining the facts in the light most favorable to the plaintiff, a

reasonable juror could find that Rafferty changed his behavior towards Caban,

---

[133]    *See Perez*, 856 N.Y.S.2d at 502 (holding that plaintiff must comply with 50-h hearing demand in order to file suit).  The 50-h requirements do not require dismissal of the federal civil rights claims.  *See Felder v. Casey*, 487 U.S. 131, 153 (1988) ("A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability, and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law.  Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court.").  *See also Zerilli v. New York City Transit Auth.*, 973 F. Supp. 311, 325 (E.D.N.Y. 1997) *aff'd in part, vacated in part*, 162 F.3d 1149 (2d Cir. 1998) (finding that failure to comply with section 50-e would not prevent Title VII action from proceeding).

[134]    *See* N.Y. Gen. Mun. Law § 50-h(1), (5) (noting that municipal entity holds right to 50-h examination and that only claims against municipal entity cannot proceed without 50-h compliance).  *See also Jusino v. New York City Hous. Auth.*, 691 N.Y.S.2d 12, 16 (1999) (holding that municipal entity is entitled to examination); *Kemp v. County of Suffolk*, 878 N.Y.S.2d 135, 136 (2009) ("A party who has failed to comply [with 50-h requirements] is precluded from commencing an action against a municipality.").

including the modification of the job description, based on his discovery that she was Puerto Rican.  A reasonable person in Rafferty's position would have known that changing Caban's job description, criticizing her work to superiors, and addressing her in an aggressive and demeaning manner – all because of her race – violated her rights under both the city and state human rights laws. While a jury must decide whether such behavior actually occurred and was motivated by race, there is no question that a reasonable person would have known that such conduct is statutorily proscribed.

### 4. Breach of Contract Claim

In order for plaintiff to bring a breach of a union contract cause of action against her employer, plaintiff must demonstrate that the union breached its duty of fair representation to the plaintiff employee.[135]  Not only is there no evidence demonstrating any breach of the duty of fair representation, but Caban does not even allege such a breach.  The breach of contract claim is dismissed with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, defendants' motion is granted as to all claims against the City of New York, as well as claim one (breach of contract),

---

[135]    *See Lewis v. North Gen. Hosp.*, 502 F. Supp. 2d 390, 398 (S.D.N.Y. 2007); *Young v. United States Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990).

claim two against CUNY (NYCHRL), claim three against CUNY (NYSHRL),

claim four against Rafferty (Title VII), and claim five (section 1983).  The motion

is denied for claim four (Title VII) against CUNY and claims two and three

(NYSHRL and NYCHRL) against Rafferty in his personal capacity.  The Clerk of

the Court is directed to close this motion [Docket No. 14].  A conference is

scheduled for December 10, 2012 at 4:30 p.m .

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             November 30, 2012

33

**-Appearances-**

**For Plaintiff:**

Robert Dembia, Esq.
Robert Dembia, P.C.
350 Broadway, Suite 1202
New York, NY 10013
(212) 226-5905


**For Defendants:**

Daniel Chiu
Assistant Corporation Counsel of the City of New York
100 Church Street, Room 2-115
New York, NY 10007
(212) 788-1158